[Cite as *State v. Jones*, 2022-Ohio-1936.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,              :

                             No. 110742

    v.                                     :

KELLY JONES,                               :

    Defendant-Appellant.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 9, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-641989-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen L. Hatcher, Assistant Prosecuting Attorney, *for appellee.*

Thomas A. Rein,* *for appellant.*

* Jonathan N. Garver is appointed for the limited purpose of post-decision representation.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Kelly Jones ("Appellant") appeals his convictions rendered after a jury trial. Appellant contends that the trial court erred

by admitting testimonial evidence in violation of the Confrontation Clause. We sustain appellant's first assignment of error, reverse the judgment of the trial court and remand this case to the trial court.

## I.    Factual and Procedural Background

{¶ 2}    On July 24, 2019, a Cuyahoga County Grand Jury returned a true bill of indictment against Appellant charging him with aggravated arson with a notice of prior conviction and a repeat violent offender specification; attempted murder with a notice of prior conviction and a repeat violent offender specification; felonious assault with a notice of prior conviction and a repeat violent offender specification; aggravated arson with a notice of prior conviction and a repeat violent offender specification; arson and domestic violence.

{¶ 3}    On September 11, 2019, the trial court referred Appellant to Northcoast Behavioral Healthcare for restoration to competency subsequent to a determination by the court psychiatric clinic, and a stipulation by the parties, that he was incompetent to stand trial. Prior to the commencement of trial on June 16, 2021, the court noted that the parties had stipulated to a report from Northcoast Behavioral Healthcare determining Appellant was competent to stand trial.

{¶ 4}    The Appellant executed a waiver of his jury trial rights with respect to the repeat violent offender specifications and notices of prior conviction.

{¶ 5}    The day before trial, Appellant filed a motion in limine seeking the exclusion of the victim's statements identifying Appellant as the perpetrator arguing those statements were inadmissible hearsay and that the admission of those

statements would violate Appellant's right to confront witnesses insofar as the state did not intend to call the victim to testify at trial. The defense argued that, although medical records of Ernestine Dumas ("Dumas") had been provided by the state in discovery, there is no suggestion in these records that Dumas suffers from Alzheimer's or dementia, and was, therefore, unavailable. There is nothing in the record before us that explains Dumas' failure to testify at the trial. The trial court denied the motion.

{¶ 6} Dumas suffered serious burns over roughly 16.5 percent of her body. She would later state that she suffered those burns as a result of an assault by Appellant in connection with Appellant's efforts to burn down her house. After suffering these burns, Dumas left her house and went across the street to her neighbor's house asking for a ride to the hospital. The neighbor, Jeraldine Campbell, called 911 on her phone and then gave the phone to Dumas. Campbell testified that she believed that the Appellant had been living with Dumas based on how often she had seen him enter, and leave, Dumas' house.

{¶ 7} On July 12, 2019, Leticia Rice ("Rice") was working as a Cleveland police dispatcher. Rice authenticated state's exhibit No. 3, an audio recording of a 911 phone call she took on July 12, 2019:

> Dumas: I need police and ambulance this guy that I let stay in my house went crazy and throwed gasoline or something on me. Trying to burn my mother's house down * * *.
>
> Rice: He threw gasoline on you?
>
> Dumas: Yes, set me on fire.

Rice:  He's . . . OK . . . He set you on fire already ma'am?

Dumas:  Yes, ma'am and I'm out now.  But it's my face, arms and chest.

Rice:  Ok. Ok. What's your address? Tell me?

Dumas: . . .2526 E. 80th Street

Rice:  2526 E. 80th?

Dumas:  Yes

Rice:  OK so you calling from someone . . . listen you're calling from someone else's phone?

Dumas:  Right.

Rice:  Is he still inside of the house?

Dumas:  He was when I left.

Rice:  OK.  What's your name?

Dumas:  Ernestine Dumas. . . I gotta get to the hospital.

Rice:  Stay on the line with me.  OK you said you were not on fire anymore.

Dumas:  I say I gotta get to a hospital.

Rice:  OK. What's the guy's name that did it?

Dumas:  Kelly Jones

{¶ 8}   The trial court admitted this audio tape as an excited utterance, over Appellant's objection.

{¶ 9}   James Donnellon ("Donnellon") testified that on July 12, 2019, he was working as a Cleveland police officer.  Donnellon testified that he and his partner were the first officers to arrive on the scene at Dumas' house.  From the outside of the house, he could see that a front window was broken and there was

glass scattered on the front porch. Donnellon waited for additional units to arrive to clear the house. While backup units were en route, Donnellon went across the street to the home of Jeraldine Campbell and spoke with Dumas. His body camera did not record the conversation clearly and the statements made by Dumas, at that time, were provided to the jury through the testimony of Donnellon.

{¶ 10} Police officers entered Dumas' house and determined that no one was present. In the room with a broken exterior window, officers found empty bottles of isopropyl alcohol and a lamp with a burned shade.

{¶ 11} Mark DePhillips ("DePhillips") testified that he investigated the fire as a lieutenant of the Cleveland Fire Department's Arson Investigation Unit. He testified that the burns in the house were consistent with the use of an accelerant. He told police at the scene that the fire did not constitute aggravated arson because he did not see any physical harm to the occupied structure itself. DePhillips also testified that he was unaware that Dumas had been burned when he told police officers that there was no aggravated arson.

{¶ 12} Charles Jones[1] testified that he is Dumas' nephew. He stated that Dumas may have had memory loss moments, but she was fairly independent. He also testified that Dumas was not diagnosed with dementia or Alzheimer's at the time of the incident. According to Mr. Jones, Dumas was "living alone independently."

---

[1] No relation to Appellant.

{¶ 13} Terencita Jones-Green[2] testified that Dumas is her aunt. She testified about the burn injuries that Dumas suffered and the medical treatment that was being administered to her. She also testified that Dumas was occasionally forgetful, but that Dumas had no diagnosis of dementia or Alzheimer's and that she was unaware of Appellant's living situation.

{¶ 14} Christopher Brandt, a burn surgeon at MetroHealth, testified that he first treated Dumas several days after her admission to the hospital. According to Dr. Brandt, Dumas suffered burns on 16.5 percent of her body and that he and his partners performed multiple surgical procedures on her during her approximate six-week hospitalization.

{¶ 15} Cleveland Police Officer Kenneth Potchatek testified that Dumas had been the subject of a Crisis Intervention Team referral due to psychological issues. Specifically, she was referred for wrongfully believing people were living in her attic. On the bodycam footage, Officer Potchatek is heard discussing Dumas as having serious dementia and stating that the fire was likely accidental. At trial, he testified that he was later convinced that her account of the assault was true because it was lucid and every detail she gave "played out." He became the primary officer on the case because he had previous experience with Dumas.

{¶ 16} We recognize the value of body cameras but the video, alone, should be generally sufficient and admissible in trials. The exhibits offered at trial in this

---

[2] No relation to Appellant.

case included oral narratives by the later-testifying police officers while on scene. This is inadmissible testimonial hearsay.

{¶ 17} Cleveland Police Detective David Sims testified that he was the detective assigned to investigate Dumas' allegations and visited her at the MetroHealth Hospital Emergency Department. Sims testified that Dumas remembered him from a burglary investigation which he had handled approximately two years earlier. Sims further testified that she identified "Kelly" as a subject. According to Sims, Dumas was in pain but was "well aware of what happened, was able to speak clearly." This is inadmissible testimonial hearsay.

{¶ 18} Cleveland Police Officer Jacob Strehle responded with his partner, Officer Potchatek, to Dumas' home and, later, to MetroHealth where he interviewed Dumas. Strehle testified that Dumas related that she had been burned by her live-in tenant, "Kelly Jones." Strehle did not record that statement. This is inadmissible testimonial hearsay.

{¶ 19} The jury returned a guilty verdict on the aggravated arson, felonious assault, arson and domestic violence charges. The jury found Appellant not guilty of attempted murder and aggravated arson.

{¶ 20} The trial court then found Appellant guilty of the notices of prior conviction and repeat violent offender specifications on both Count 1, aggravated arson and Count 3, felonious assault. Appellant was sentenced to 11 years on Count 1 and ten years for the repeat violent offender specification to Count 1; eight years

for Count 3; 18 months for Count 5 and time served for Count 6. The court also sentenced Appellant to five years' mandatory postrelease control.

{¶ 21} The trial court advised Appellant of the application of the Reagan Tokes Law. Under that law, the sentence for Count 1 (11 years) was the minimum sentence and the maximum sentence would be 16 years and six months. In total, the trial court sentenced Appellant to 30 years and six months. The sentence could be lengthened under Reagan Tokes up to 36 years.

{¶ 22} Appellant appeals and assigns the following errors for our review:

Assignment of Error I: The trial court erred in the admission of hearsay evidence and testimonial statements, in violation of Appellant's right to confront his accusers, as protected by the Sixth Amendment of the United States Constitution.

Assignment of Error II: The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(a), on the charges, and thereafter entering a judgment of conviction of those offenses as those charges were not supported by sufficient evidence, in violation of defendant's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution.

Assignment of Error III: Appellant's convictions are against the manifest weight of the evidence.

Assignment of Error IV: The trial court erred by ordering convictions and a separate sentence for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.1.

Assignment of Error V: The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

Assignment of Error VI: The trial court erred by imposing an indefinite prison sentence upon Appellant which is unconstitutional.

Assignment of Error VII: The trial court erred by allowing the State to re-open its case to present additional evidence after all verdicts had already been rendered.

## II. Argument and Authorities

{¶ 23} We need only address Appellant's first assignment of error since that is dispositive of this appeal. The trial court admitted the victim's statements that were made about an hour after the assault, and it was determined that everyone was safe. Accordingly, we find that these statements are testimonial, and their admission violated the Confrontation Clause of the U.S. Constitution.

Assignment of Error I: The trial court erred in the admission of hearsay evidence and testimonial statements, in violation of Appellant's right to confront his accusers, as protected by the Sixth Amendment of the United States Constitution.

{¶ 24} Appellant contends that the trial court erred in admitting the statements of Dumas because their admission violated Appellant's right to be confronted with the witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution. The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [or her]." The United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

1. For Confrontation Clause purposes, a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (*Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), followed.)

2. In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.

*State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraphs one and two of the syllabus. "We apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause." *State v. Bowleg*, 8th Dist. Cuyahoga Nos. 100263 and 100264, 2014-Ohio-1433, ¶ 10. At trial, the linchpins of the prosecution's case were the poor audio recordings and videorecorded statements of the victim identifying Appellant as the attacker, which were only provided through the testifying officers.

{¶ 25} The state introduced an audio recording of the victim's phone call to 911. During this conversation, Dumas relates that she had been burned by an assailant at her house and that she was now present at a neighbor's house. During this call, Dumas also stated the assault happened about an hour ago and agreed that everybody was safe and out of danger. The trial court expressed doubt as to Dumas' estimate of the timeframe, but the only evidence in the record to that fact is Dumas' statement of the time lapse. Dumas also stated that the assailant was in her house when she left and when asked by the operator: "What's the name of the guy that did it?" Dumas replied that his name is "Kelly Jones." The state also elicited testimony

from the neighbor, Jeraldine Campbell, who testified that Dumas said that Appellant "had thrown fire on her[.]"

{¶ 26} The state also introduced bodycam footage of Officer Donnellon. In that footage and audio, Donnellon asks Dumas who burned her, and Dumas identified Appellant as the man who burned her. The footage shows that Dumas was receiving care from paramedics when the police questioned her.

{¶ 27} The United States Supreme Court in *Davis v. Washington*, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), identified four factors that could be used to identify testimonial statements: "(1) that the interrogation sought to determine what had happened, not what was happening, (2) that there was no ongoing emergency, (3) that the interrogation was not needed to resolve an emergency, and (4) that the interrogation was 'formal[.]'" *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 15, citing *Davis*.

{¶ 28} Dumas made the statements after she left her house and agreed that everyone was safe and out of danger. Any "ongoing emergency had ended." *State v. Cooper*, 8th Dist. Cuyahoga No. 96635, 2012-Ohio-355, ¶ 7; *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 12 (1st Dist.). Dumas' statements were elicited by two law enforcement representatives: the 911 operator and Officer Donnellon, after the emergency had ended. These police personnel were "not seeking to determine (as in *Davis*) 'what is happening,' but rather 'what happened.'" *Davis* at 830. These recordings functioned as "a weaker substitute for live testimony." *Id.* at 828. As in

*Smith*, the police "were aware that the incident had ended some time before." *Smith* at ¶ 12.

{¶ 29} The first three *Davis* factors all weigh in favor of finding these statements testimonial. The only factor in favor of finding these statements as nontestimonial is their informality. This single factor is not sufficient to render otherwise testimonial statements nontestimonial.

{¶ 30} This case is distinguishable from earlier cases from this district concerning bodycam footage. In *Cleveland v. Johnson*, 8th Dist. Cuyahoga No. 107930, 2019-Ohio-3286, ¶ 19-20, the declarant made her statements "shortly" after the altercation and she stated that the perpetrator could be destroying her house when she talked with the police. The *Johnson* Court determined that the admission of the subsequent conversation with the police was harmless error. *Id.* at ¶ 21.

{¶ 31} In *State v. Tomlinson*, 8th Dist. Cuyahoga No. 109614, 2021-Ohio-1301, ¶ 43, the declarant made statements from the scene of the crime with the reasonable apprehension that the assailant may return.

{¶ 32} In the case at bar, Dumas made her first statement "an hour" after the assault, from a different location, with no reason to conclude that the assailant would follow her. In any event, Dumas was in the custody of, and receiving care from, paramedics in the bodycam footage.

{¶ 33} These recordings are testimonial. As a result, the admission of these recordings violated Appellant's rights under the Confrontation Clause.

{¶ 34} The statements of Dumas made on the night of the assault are not the only statements admitted by the trial court. Officers Strehle and Potchatek as well as Detective Sims all testified about subsequent statements made by Dumas concerning the assault. Dumas made these statements while she was receiving medical treatment at both MetroHealth and at a rehabilitation center.

{¶ 35} Detective Sims testified that he talked with Dumas several times in the months following the assault and that she gave the same or similar account of events. Detective Sims was the lead detective on the case questioning the victim well after the underlying assault. Dumas, according to Detective Sims was "well aware and able to speak clearly" when he repeatedly questioned her. She then should have understood that these statements accusing Appellant of assault happened in the context of investigation and prosecution. *Davis*, 547 U.S. at 826, 126 S.Ct. 2266, 165 L.Ed.2d 224 ("Interrogations by law enforcement officers fall squarely within the class of testimonial hearsay"); *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (Testimonial statements include "at a minimum * * * police interrogations"). Accordingly, the admission of the statements of Dumas recounted by Officers Strehle and Potchatek and Detective Sims all violated Appellant's Confrontation Clause rights.

{¶ 36} There is no support in the record nor any suggestion that these subsequent statements could have been excited utterances nor that they could be determined to be nontestimonial given they were made to officers and detectives that were expressly eliciting statements in connection with an investigation.

{¶ 37} In the context of this case, we cannot find the admission of Dumas' testimonial statements harmless beyond a reasonable doubt. *See State v. Cutlip*, 9th Dist. Medina No. 03CA0118-M, 2004-Ohio-2120, ¶ 17-18 (finding that error is not harmless as there was no evidence other than the evidence that should have been excluded).

{¶ 38} The purpose of police body cameras is to record events in which law enforcement officers are involved. The Bureau of Justice Statistics in 2018 published a report which reflects the main reasons for law enforcement agencies to acquire body cameras were to improve officer safety, increase evidence quality, reduce civilian complaints and reduce agency liability.

{¶ 39} Body cameras and their attendant audio recordings, should not, and cannot, supplant or bolster the in-court testimony of witnesses. They cannot be used to supplement the testimony of any witness and certainly cannot be used as a substitute for the testimony of any witness.

{¶ 40} We sustain Appellant's first assignment of error. We reverse the judgment of the trial court and remand this case for a new trial. Based on our resolution of the first assignment of error, we need not address the remaining assignments of error.

It is ordered that the appellant recover of appellee costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

LISA B. FORBES, J., and
EMANUELLA D. GROVES, J., CONCUR