[Cite as *State v. Torres*, 2022-Ohio-3230.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 111037 |
| NATHANIEL TORRES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 15, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-657236-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Harrison, Assistant Prosecuting Attorney, *for appellee.*

D.W. Smith Legal Services and Derek W. Smith, *for appellant.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Nathaniel Torres ("appellant") brings the instant appeal challenging his conviction and the trial court's denial of his motion for new trial.

After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Appellant and the victim in this matter had been involved in a relationship. Appellant was married during this time and had lied to the victim for over a year.

{¶ 3} After the victim found out that appellant had been lying to her about his marital status, they broke up. She later went to the home that they had shared in order to collect her belongings. Appellant entered the home while she was there and confronted her. He shoved her on the bed and forcibly removed her pants. At the time, the victim was pregnant with appellant's child. He put his mouth on her body and bit her breast. He then "checked her vagina with his hand" in an attempt to determine whether she was still pregnant or had had an abortion.

{¶ 4} The victim was able to escape and called 911 while appellant yelled at her in the background. Appellant then fled in his vehicle. The Strongsville police responded to the scene and took a report and statement from the victim.

{¶ 5} Appellant was charged with two counts of gross sexual imposition, felonies of the fourth degree, in violation of R.C. 2907.05(A)(1). Appellant waived his right to a jury trial.

{¶ 6} The matter proceeded to a bench trial, and the state began its case-in-chief by calling the victim as a witness. When she took the stand, she answered

several preliminary questions, identified appellant, and then refused to answer any further questions, invoking her Fifth Amendment right.

{¶ 7} The state presented the testimony of Strongsville Police Officer Matthew McKinney, who testified as to the events in question and his interaction with the victim. A video from his body camera was played, which depicted his conversation with the victim. Officer McKinney further testified that he had called the victim nearly four hours later at the request of the prosecutor to ask some clarifying questions. It was at this time the victim stated that after appellant had pulled down her pants, he "checked her vagina" to see if she had had an abortion.

{¶ 8} Appellant testified on his own behalf and attempted to call the victim as a witness. The court noted that the victim was represented by counsel and asked appellant's counsel if he had coordinated the victim testifying with her counsel. Appellant's counsel had not done so; consequently, the court precluded appellant from calling the victim as a witness.

{¶ 9} At the conclusion of the trial, the court found appellant guilty of both counts. At the sentencing hearing, appellant moved for a new trial, arguing that the victim had recanted her allegations against him. The trial court denied the motion and sentenced appellant to 16 months in prison on each count, to be run concurrently.

{¶ 10} Appellant then filed the instant appeal, raising four assignments of error for our review:

1. The trial court erred in denying appellant's motion for new trial based on newly discovered evidence.

2. Appellant's conviction was based on insufficient evidence as a matter of law and was against the manifest weight of the evidence.

3. Ineffective assistance of counsel.

4. The trial court erred by allowing inadmissible testimonial statements to be admitted through non-declarant testimony in violation of the Sixth Amendment to the U.S. Constitution.

## II. Law and Analysis

{¶ 11} For ease of discussion, we will address appellant's assignments of error out of order.

## A. Admission of Testimonial Statements

{¶ 12} In appellant's fourth assignment of error, he argues that the trial court erred by admitting testimonial statements made by the victim to police that violated the Confrontation Clause of the Sixth Amendment.

{¶ 13} Appellant argues that the officer's statement regarding the victim's allegations should have been excluded because there was no immediate threat to the victim nor was there an emergency in progress since appellant had already left the scene by the time the police arrived. Appellant contends that the victim's statements were testimonial and thus constituted hearsay.

{¶ 14} Preliminarily, we note that appellant failed to object to these statements at trial and thus, we may only review for plain error. In order to find plain error, it must be determined that, but for the error, the outcome of the proceeding clearly would have been different. *State v. Hostacky*, 8th Dist. Cuyahoga

No. 100003, 2014-Ohio-2975, citing *State v. Long*, 53 Ohio St.2d 91, 96-97, 372

N.E.2d 804 (1978).  However,

> "[a]n assertion upon appeal, pursuant to Crim.R. 52(B), that evidence
> admitted without objection at trial was prejudicial to the defendant
> and  should have been excluded, will not be entertained where the
> defendant had adequate legal representation at trial, and where it is
> apparent from the record that the failure to object was a deliberate
> tactic of counsel."

*State v. Pardon*, 10th Dist. Franklin No. 20AP-206, 2022-Ohio-663, ¶ 51, quoting

*State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976), paragraph three of the

syllabus.

{¶ 15} In the instant matter, appellant's trial counsel's theory of the case was

that the victim was a scorned woman who was out for revenge.  In his opening

statement, appellant's trial counsel characterized the victim's actions in accusing

appellant as follows:

> And because [the victim] was angry, she decided that, I'm going to hurt
> [appellant] the best possible way I can.  And the best possible way she
> could hurt him is to weaponize the system, was to falsify a police report
> alleging gross sexual imposition, alleging assault, alleging anything she
> could to possibly hurt [appellant].
>
> We are going to show with testimony today, with cross-examination,
> and with any evidence that the prosecutor wants to bring that all this is
> false.

{¶ 16} When appellant's trial counsel cross-examined Officer McKinney, he

asked him about his experience with falsified complaints and whether he was able

to tell when a victim was lying when making a police report or complaint.  He

specifically questioned Officer McKinney about the victim's statements from the

body-camera video and whether certain details were not present in her oral statements to him but were mentioned in her subsequent written statement. In addition, defense counsel attempted to ask a number of questions about victims being untruthful (which were excluded because they called for speculation by the officer), which resulted in the trial court stating that it recognized the point that defense counsel was trying to make and took judicial notice that "not all domestic violence victims are victims." (Tr. 45.)

{¶ 17} The same narrative of the victim as an angry woman out for vengeance was evident during appellant's testimony. On direct examination, appellant was asked about the victim's temper problem and stated that "when she is angry, she will do anything to try to hurt you, to get back at you for hurting her." (Tr. 59.) He further stated that the victim had threatened him by saying that his "days were numbered." *Id.* On redirect examination, defense counsel asked appellant about whether the victim was cheating on him, whether they had "kind of a toxic relationship," and whether the victim was "kind of a dishonest person[.]" (Tr. 82-83.)

{¶ 18} Finally, in his closing argument, appellant's trial counsel continued to paint the victim as an angry woman who wanted to make appellant pay for cheating on her. He stated that the victim asserted her Fifth Amendment rights because she was afraid of being in trouble for falsifying a police report.

{¶ 19} Accordingly, appellant's trial counsel clearly intended for the victim's statements to come in at trial to support his theory that the victim was a liar who

falsified the allegations in order to hurt appellant. It is evident that trial counsel's failure to object to the victim's statements was a deliberate trial tactic; thus, there can be no plain error arising from their admission. *See State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 39 (declining to find plain error because defense counsel's failure to object was a legitimate trial strategy to expose a significant weakness in the state's case).

{¶ 20} Appellant's fourth assignment of error is overruled.

## B. Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶ 21} In appellant's second assignment of error, he argues that his conviction was based upon insufficient evidence and was against the manifest weight of the evidence. We note that while appellant references a sufficiency argument, he fails to cite to the record or present any case law in support thereof. "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." *Foster v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 96841, 2011-Ohio-5508, ¶ 12, citing *State v. Martin*, 12th Dist. Warren No. CA99-01-003, 1999 Ohio App. LEXIS 3266 (July 12, 1999), citing *Meerhoff v. Huntington Mtge. Co.*, 103 Ohio App.3d 164, 658 N.E.2d 1109 (3d Dist.1995); *Siemientkowski v. State Farm Ins. Co.*, 8th Dist. Cuyahoga No. 85323, 2005-Ohio-4295. "'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'" *Foster*, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028 (May 6, 1998).

Accordingly, within this assignment of error, we shall only consider appellant's manifest weight of the evidence argument.

{¶ 22} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶ 23} A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins* at 387; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. We find that the state met its burden here.

{¶ 24} Appellant argues that there was little to no evidence in the record that he was even at the victim's residence on the night in question. He contends that the only evidence as to what occurred is the victim's statements to the officer and asserts

that the officers did not observe any marks on her face or arms or other evidence of a struggle.

{¶ 25} In reviewing the entire record, we find that the evidence presented by the state was more persuasive than appellant's testimony. While the victim invoked her Fifth Amendment right and did not testify during trial, her statements to the officer were heard on the recording from his body camera. Further, while appellant testified that he was not present at the residence, he was heard in the background of the 911 call made by the victim. While appellant denied that it was his voice on the call, as the trial judge noted, appellant had admitted several times that he had lied in important aspects of his life, rendering his credibility dubious. Further, it defies logic to think that the victim happened to have appellant's voice recorded to play in the background while she called 911 in order to set him up for this crime or had some other man there to pretend to be appellant. While this court cannot compare appellant's voice on the recording to his live testimony, we note that the trial court judge stated that he had no doubt that they were the same person.

{¶ 26} After reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and resolving any conflicts in evidence, we cannot find that the trial court lost its way, nor can we say this is the exceptional case that requires reversal under the manifest weight standard. Appellant's second assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶ 27} Appellant's third assignment of error simply states "ineffective assistance of counsel." He expands on this plain assertion by arguing that his trial counsel failed to subpoena witnesses that would have supported his alibi. In addition, he contends that his trial counsel failed to communicate with the victim's attorney to ensure that she could be present for cross-examination. He maintains that as a result, he was precluded from calling the victim and was therefore prejudiced.

{¶ 28} Appellant has the burden of proving ineffective assistance of counsel over a strong presumption that a properly licensed trial counsel rendered adequate assistance. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph two of the syllabus; *see also Strickland* at 687.

{¶ 29} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965).  In evaluating whether a petitioner has been denied the effective assistance of counsel, the Supreme Court of Ohio has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

{¶ 30} When making that evaluation, a court must determine whether there has been a substantial violation of any of defense counsel's essential duties to his client and whether the defense was prejudiced by counsel's ineffectiveness.  *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 31} "In order to obtain a reversal on ineffective assistance of counsel based on a failure to subpoena a witness, a defendant must demonstrate that the testimony of the witness would be of significant assistance to the defense." *State v. Varner*, 5th Dist. Stark No. 98CA00016, 1998 Ohio App. LEXIS 4707 (Sept. 14, 1998), quoting *State v. Reese*, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253 (1st Dist.1982). Appellant contends that there were witnesses who were with him on the night in question that could have aided his defense.  Appellant seemingly ignores the 911 call where he is heard in the background, thus negating any potential alibi testimony. As noted above, the trial judge stated that, after hearing appellant testify, he had no doubt that the voice on the 911 call was appellant's voice.  Thus, appellant has failed

to demonstrate how the outcome of the trial would have been different if his counsel had subpoenaed alibi witnesses.

{¶ 32} Appellant further asserts that his counsel was ineffective by failing to secure the victim's availability to be called as a witness in his defense. However, the victim was present on the first day of trial and invoked her Fifth Amendment right and declined to testify. Again, appellant has failed to show that the outcome of the trial would have been different, and his third assignment of error is overruled.

## D. Motion for New Trial

{¶ 33} In appellant's first assignment of error, he argues that the trial court erred by denying his motion for new trial based upon newly discovered evidence. In appellant's motion, he states that his counsel received a copy of a video-recorded interview administered by "Investigations America Inc.," along with a notarized transcript of the video. He explains in his motion that the video contains a full admission by the victim that the allegations reported to the Strongsville Police Department relating to this matter were false and motivated by her anger toward appellant. Appellant further states that his counsel also received a notarized affidavit from the victim stating that she wished to recant her allegations against appellant. Neither the transcript of the video nor the affidavit of the victim appear to have been attached to the motion.

{¶ 34} The state opposed the motion, arguing that the outcome of the trial would not have changed as the result of the purported new evidence. At trial, the court heard from the victim, who identified appellant and then refused to testify

further. The trial court also heard from appellant who was impeached with the recording of the 911 call.

{¶ 35} In addition, the state contends that the evidence is not "new" evidence because all parties, including the court, were aware that the victim had recanted during the pendency of the case. Moreover, appellant could have discovered this evidence prior to trial.

{¶ 36} A motion for new trial is within the sound discretion of the trial court, and a court's ruling on the motion will not be disturbed on appeal absent an abuse of discretion. *State v. Matthews*, 81 Ohio St.3d 375, 378, 691 N.E.2d 1041 (1998).

> To warrant the granting of a new trial on the grounds of newly discovered evidence, "it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*State v. Barnes*, 8th Dist. Cuyahoga No. 95557, 2011-Ohio-2917, ¶ 23, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), at syllabus.

{¶ 37} The trial court denied the motion for new trial prior to sentencing appellant, stating as follows:

> As it regards the motion for new trial, the Court is not inclined at this point to grant a motion for a new trial for the following reasons: First of all, the first prong of *Barnes* indicates that there has to be a reasonable chance of success. So as the person that actually made the decision as to guilt or innocence, I don't believe he has a reasonable chance of success, having weighed the evidence, number one.

And the reason I say that is because the testimony of the defendant himself was so damaging to his case that, as I think I commented at the time of the verdict, that his credibility was close to zero because, among other things, the defendant took the stand and testified how he has lied throughout his entire life to the people closest to him in regards to matters that are most important, such as bringing children into the world. I believe he testified that he cheated on his first wife with the second wife, cheated on his second wife with the current girlfriend, and indeed the victim in this case was pregnant at the time of the assault that occurred on January 20, 2021.

As a matter of fact, she said that he showed up after having been advised by the Strongsville Police Department not to trespass at that location, pushed her onto the bed and started to touch her body while pulling down her pants. [The victim] stated in the statement to the police that he refused to stop or get off of her. He prevented her from leaving. At some point he went outside to have a cigarette.

And the defendant made a statement — pardon me, the victim made a statement to the police stating — I'm reading from the PSI — [The victim] stated that when Mr. Torres was pulling down her pants, quote, to see if she got an abortion, close quote, he felt her vagina with his hand. She says that they had not lived together since around December 25th, 2020, after finding out that Mr. Torres was married and has a family.

Now, Mr. Torres himself admitted withholding this information, admitted cheating on the first wife with the second wife and the second wife with this woman, admitted that he didn't tell her that he was married. Then he went so far as to say that he was never even there, when clearly the audio recording of the 911 call puts him there. So it was a demonstrable lie under oath at his trial. So in terms of credibility, this defendant's credibility is really, as I said before, very, very low. Very, very compromised credibility.

Furthermore, this is evidence that was available at the time of the trial. This is a witness who was subpoenaed, who appeared with counsel, Mary Catherine Corrigan, who invoked her Fifth Amendment rights. She didn't recant at the time. She didn't say anything. She invoked her Fifth Amendment rights. One can reasonably speculate as to why she did that. I've been doing this for a long time, 30 years as a judge, 40 years as an attorney, and it is very commonplace for women who are victims by a partner or a husband to recant for many, many different

reasons. It probably happens in upwards of 35 percent of the cases. There is either a partial or a full recantation.

And this case, you know, was curious in the sense that this defendant, when advised by police, when advised by this Court, to have no contact with this victim, has continued during the course of this litigation to ignore those orders and have contact with the victim.

So, therefore, we must interpret this behavior and the alleged victim's behavior, the victim's behavior. This is what I mean. The Court recalls that the — at that time she was the alleged victim — would not cooperate with the State of Ohio, would not appear at trial. This Court has a policy that when a person has been subpoenaed and they are a victim in a case, particularly a domestic violence, that they're going to appear. I don't care what they say when they show up. If they want to recant, they can recant. If they want to testify they can testify. If they want to — they have to show up. This victim was refusing to show up until the Court was prepared to issue a bench warrant for her arrest.

Then, at that time, she lawyered up. And she appeared and she invoked her Fifth Amendment rights.

Now, the defense has suggested and would like the Court to believe that the reason that she's invoking her Fifth Amendment rights is because she filed a false police report. But the prior incident between this defendant and the victim in December, the order of the Strongsville Police Department for him not to be there, and the fact that he was absolutely there according to the 911 call gives me a clear indication that the police report that was made by this woman on January 20th, 2021, was not falsified. She has never appeared in court and recanted.

Now, what we have, therefore, is a witness that, after the trial, wishes the Court apparently now to reopen the evidence and to take into consideration her recantation at this point without putting it into a context. And what is the context? The context is that this defendant, despite being ordered to have no contact with his victim, has had contact with her every day from the Cuyahoga County Jail and apparently set up through the sister an interview with a private investigator that gives rise to this, quote, new evidence, close quote.

The Court is not willing to accept it as new evidence. The ability to have an investigator talk to this woman existed prior to the trial. You could have hired an investigative outfit at that point. It wasn't necessary for you to until after the trial. So it could have been discovered, but the

steps by you weren't taken. I don't believe that this recantation would change the outcome, and I don't believe that it should be accepted at this point. I don't believe it is appropriate to reopen a case after the evidence has been tried absent a reversal from the Court of Appeals. So I'm going to deny the motion for a new trial.

{¶ 38} We agree with the trial court that appellant did not establish that the purported evidence was newly discovered or that it would have changed the outcome of the trial. Moreover, as this court has previously noted, "we recognize that a motion for a new trial that is based on recanted testimony is looked upon with the utmost suspicion and is to be granted only when the court is reasonably satisfied that the trial testimony given by a material witness was false." *Barnes* at ¶ 25, citing *State v. Braun*, 8th Dist. Cuyahoga No. 95271, 2011-Ohio-1688, ¶ 39. Here, the trial court was able to hear the victim's statements to police immediately after the incident, and the trial court clearly did not question the veracity of those statements.

{¶ 39} In addition, the evidence could have been discovered prior to trial in the exercise of due diligence and merely impeaches other evidence. Thus, appellant failed to demonstrate that a new trial was warranted on the grounds of newly discovered evidence. We cannot say the trial court abused its discretion in denying appellant's motion for new trial, and appellant's first assignment of error is overruled.

### III. Conclusion

{¶ 40} The trial court did not err in admitting the victim's statements to the police officer after the incident. In addition, appellant's convictions were not against the manifest weight of the evidence, and appellant's trial counsel was not ineffective.

Finally, the trial court did not abuse its discretion in denying appellant's motion for new trial. All of appellant's assignments of error are overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE OPINION

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 42} I respectfully dissent from the majority opinion. I disagree with the majority's conclusion that the officer's statements and the body-camera recording regarding the victim's statements were admissible.

{¶ 43} The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him." In interpreting the Confrontation Clause, the United States Supreme Court has made

two findings about the requirements of this constitutional provision. *Crawford v. Washington*, 541 U.S. 36, 43-50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). First, the court determined that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50. Second, the court found "that the Framers would not have allowed the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54.

{¶ 44} I am mindful that this case involved a bench trial in which the trial court is presumed to have considered only relevant, material, and competent evidence. I would nevertheless hold that the victim's statements to the officers were testimonial and deprived Torres of the opportunity for cross-examination and they were inadmissible because they violated Torres's constitutional rights. The United States Supreme Court has elevated the protections of the Confrontation Clause as follows:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability" * * *. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

*Crawford* at 60.

{¶ 45} Further, setting aside the requirements of the Confrontation Clause because testimony appears reliable "is akin to dispensing with jury trial because a defendant is obviously guilty" which is unequivocally "not what the Sixth Amendment prescribes." *United States v. Hadley*, 431 F.3d 484, 495 (6th Cir.2005), citing *Crawford* at 60-62.

{¶ 46} In *Crawford*, the United States Supreme Court held that "testimonial" hearsay statements may only be admitted where the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness regarding the subject matter of the statements. *Crawford,* 541 U.S. 36, 68-69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the *primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 23, quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶ 47} In *Davis*, the United States Supreme Court identified four factors that could be used to identify testimonial statements: "(1) that the interrogation sought to determine what had happened, not what was happening, (2) that there was no ongoing emergency, (3) that the interrogation was not needed to resolve an emergency, and (4) that the interrogation was 'formal[.]'" *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 15, citing *Davis* at 830.

{¶ 48} Statements are nontestimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency." *Davis* at 817. An ongoing emergency can exist after the original threat to the victim has ceased to exist if there is a potential threat to police or the public or the victim is in need of emergency medical services. *Michigan v. Bryant*, 562 U.S. 344, 376, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). An ongoing emergency may also exist after the actual threat to the victim has ceased if authorities must determine whether to release the victim back into a potentially abusive environment. *Ohio v. Clark*, 576 U.S. 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015).

{¶ 49} The circumstances in this case clearly indicate that there was no ongoing emergency, the statements in question were testimonial in nature, and the statements were therefore inadmissible at trial. The victim in this case called 911, and Torres left the residence before police responded to the residence. The responding officers were notified by dispatch that Torres had left the residence before they responded to the scene. The majority states that the attack "had just occurred" and the officers had no way of knowing if Torres was going to return to the scene. Therefore, the majority reasons, the circumstances indicate that the primary purpose of the officers' questioning of the victim was to enable police to handle an ongoing emergency.

{¶ 50} Having reviewed the record, and specifically the body-camera footage of the responding officers, I respectfully disagree with this characterization of the

circumstances and the corresponding conclusion. Upon arriving at the residence, officers met the victim, who calmly answered the door and began explaining the situation. While it is technically correct that neither the victim nor the officers had any way of knowing if Torres was going to return to the scene, a review of the record indicates that neither the victim nor the officers showed any concern that Torres's return was imminent. In fact, the victim spent the initial part of her encounter telling the officers about incidents that had occurred over the entire course of her relationship with Torres and explaining their dynamic before even mentioning what prompted her to call 911 that night. This discussion of the victim's history with Torres was not necessary to be able to resolve a present emergency, but was instead useful only for the officers to learn, as in *Crawford*, what had happened in the past. *State v. Jones*, 8th Dist. Cuyahoga No. 110742, 2022-Ohio-1936, ¶ 28, citing *Davis*, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 51} After providing the officers with background information on her history with Torres, the victim proceeded to calmly explain what had occurred that evening. The officers then asked the victim if she "wanted to do anything with this or are you okay" since she had collected her belongings from the house. The victim mentioned that she would likely seek a protection order the next day, and the officers then proceeded to opine on what possible charges could be filed against Torres. The officers made statements about writing up their report, taking it back to their supervisor, and what exactly Torres could be charged with. At this point in the encounter, the victim went into another room to write out her statement, while the

officers remained in the home's entryway and casually chatted about personal matters. Pursuant to *Crawford*, these circumstances are an additional indicator that the victim's statements were testimonial in nature.

{¶ 52} Once the victim had completed her written statement, the officers offered to stay with her until she was ready to leave the house, but she declined. The victim then stated that she might return to the house the next day with a relative. None of this indicates that anyone involved was particularly concerned about an ongoing emergency, that the interrogation sought to determine "what was happening," or that the interrogation was needed to resolve an ongoing emergency.

{¶ 53} The state argues that while cases cited by Torres are concerned narrowly with whether there is an ongoing threat to the alleged victim of domestic violence, the United States Supreme Court has held that whether an emergency exists and remains ongoing depends on the type and scope of danger posed to the victim, the police, and the public. *Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93. The state goes on to assert that this case should be distinguished from domestic violence cases like *Davis* and *Hammon* because this case involves sexual violence. Setting aside the muddled distinction the state attempts to make between sexual violence and domestic violence in the context of this case, the state's argument here is unpersuasive. Regardless of the particular type of violence allegedly suffered by the victim here, the circumstances in this case objectively indicate that neither the victim, nor the police, nor the public, faced a continuing threat from Torres. *Michigan v. Bryant* dealt with statements made while an "armed shooter, whose

motive for and location after the shooting were unknown and who had mortally wounded [the victim] within a few blocks and within a few minutes of the location where police found [the victim.]" *Id*. at 374. This case is thus easily distinguishable from the instant case. Here, the motive was known once the victim explained her history with Torres, and the police exhibited no concern for determining Torres's whereabouts in order to protect the victim and/or public from any sort of ongoing threat. Further, without dismissing any harm the victim may have suffered, nothing in the record of this case indicates that she was suffering from immediate physical or psychological harm indicative of an ongoing emergency.

{¶ 54} Nothing about these circumstances objectively indicates that the interrogation was to enable the police to meet an ongoing emergency. The conversation between the victim and the officers contained no mention of Torres's likely whereabouts, the likelihood that he would return, or any fear of the victim's that he would return. No one involved exhibited any sense of fear or urgency in response to what had allegedly occurred between Torres and the victim.

{¶ 55} This case is distinguishable from earlier cases from this district concerning body-camera footage. In *Cleveland v. Johnson*, 8th Dist. Cuyahoga No. 107930, 2019-Ohio-3286, ¶ 19-20, the declarant made her statements "shortly" after the altercation and she stated that the perpetrator could be destroying her house when she talked with the police. The *Johnson* Court determined that the admission of the subsequent conversation with the police was harmless error. *Id*. at ¶ 21.

{¶ 56} In *State v. Tomlinson*, 8th Dist. Cuyahoga No. 109614, 2021-Ohio-1301, ¶ 43, the declarant made statements from the scene of the crime with the reasonable apprehension that the assailant may return.

{¶ 57} Here, the victim made her statements after the assault occurred, the assailant had left, and when the victim had no reason to conclude that he would return.

{¶ 58} The purpose of police body cameras is to record events in which law enforcement officers are involved, primarily to improve officer safety, increase evidence quality, reduce civilian complaints, and reduce agency liability. *Jones*, 8th Dist. Cuyahoga No. 110742, 2022-Ohio-1936, at ¶ 38. As such, body cameras should not, and cannot, supplant or bolster the in-court testimony of witnesses, and certainly cannot be used as a substitute for the testimony of any witness. *Id.* at ¶ 39.

{¶ 59} I am mindful that because defense counsel did not object to these statements at trial, we review for plain error. To establish plain error, Torres "must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." *State v. McAlpin*, Slip Opinion No. 2022-Ohio-1567, ¶ 66.

{¶ 60} As discussed above, an obvious error occurred where testimonial statements made by the victim were admitted at trial where Torres was unable to cross-examine the victim on those statements. Further, I believe that there is a

reasonable probability that this error resulted in prejudice to Torres because the state's entire case rested on statements made by the victim.

{¶ 61} Having concluded that the statements in question were testimonial in nature, I must now address the unavailability of the victim witness. The United States Supreme Court has held that "'where testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *State v. Cutlip*, 9th Dist. Medina No. 03CA0118-M, 2004-Ohio-2120, ¶ 14, quoting *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 62} Here, the state called the victim as the first witness in its case-in-chief. The victim took the stand, answering several basic questions. After the victim identified Torres and stated that he was the father of her newborn child, the assistant prosecuting attorney asked the victim if she had ever been in a relationship with Torres. At this point, the victim invoked her Fifth Amendment right. Therefore, the record establishes that the victim was unavailable. However, the record also establishes that Torres did not have a prior opportunity for cross-examination. Therefore, the admission of the testimonial statements violated Torres's Sixth Amendment right to confront the witnesses against him. *Id.* at ¶ 16.

{¶ 63} Therefore, I would find that the trial court committed plain error in admitting these statements at trial. I would accordingly reverse the judgment of the trial court and remand the case for a new trial. Because the fourth assignment of

error is dispositive, I would decline to address Torres's first three assignments of error. For these reasons, I respectfully dissent.